**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANE HIRSCHHORN**,<br>Plaintiff,<br><br>v.<br><br>**CHURCH & DWIGHT CO., INC.**,<br>Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>2:10-CV-1156-JF |

**DEFENDANT'S MOTION FOR A STAY PENDING THE FEDERAL CIRCUIT'S DECISION ON THE ISSUE OF SUBJECT MATTER JURISDICTION**

Defendant Church & Dwight, Co., Inc. moves to stay all proceedings pending the Federal Circuit's decision on the issue of subject matter jurisdiction currently on appeal in *Stauffer v. Brooks Brothers*, Fed. Cir. nos. 2009-1428, -1430. The reasons for this Motion are set forth in the accompanying Memorandum of Law in Support of Defendant's Motion for a Stay Pending the Federal Circuit Decision on the Issue of Subject Matter Jurisdiction, which is incorporated by reference herein.

Respectfully submitted,

Date: April 19, 2010

*s/ Fred T. Magaziner*

Fred T. Magaziner
Attorney I.D. 23332
Kevin Flannery
Robert W. Ashbrook, Jr.
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
*Counsel for Defendant Church & Dwight Co., Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANE HIRSCHHORN**, | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:10-CV-1156-JF |
| | ) | |
| **CHURCH & DWIGHT CO., INC.**, | ) | |
| Defendant, | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A STAY PENDING THE FEDERAL CIRCUIT'S DECISION ON THE ISSUE OF SUBJECT MATTER JURISDICTION**

## I. INTRODUCTION

In a few months, the Federal Circuit will decide whether federal courts have subject matter jurisdiction over false patent marking cases like this one. If the Federal Circuit affirms the decision of the United States District Court for the Southern District of New York in *Stauffer v. Brooks Brothers, Inc.*, 615 F. Supp. 2d 248 (S.D.N.Y. 2009), this case will end. Defendant Church & Dwight moves this Court to stay this case until the Federal Circuit decides whether this Court has subject matter jurisdiction to hear it. Several other courts have already stayed similar false patent marking cases pending the Federal Circuit's decision.

## II. BACKGROUND

### A. False Patent Marking

The Patent Act of 1842 prohibited false patent marking and permitted *qui tam* enforcement, allowing "any person" to sue on behalf of the United States (*i.e.*, to serve as a "relator") and to collect half of the penalty. 5 Stat. 544-45 (1842). The *qui tam* aspect of the statute was intended to reward competitors who used their expertise and time to

determine that certain products were not truly covered by the patents with which they were marked. *See generally* Elizabeth I. Winston, *The Flawed Nature of the False Marking Statute*, 77 TENN. L. REV. 111, 116-17 (2009). Today's false marking statute, adopted in 1952, is remarkably similar to the 1842 Act. It is still a *qui tam* statute, setting the fine for false marking as "not more than $500 for every such offense." 35 U.S.C. § 292.

B. <u>The Litigation Bubble Following the Federal Circuit's *Forest Group* Decision</u>

Four months ago, the Federal Circuit upset 167 years of conventional wisdom by ruling that each time a manufacturer falsely marks a product, it constitutes a separate "offense," *e.g.*, a chewing gum manufacturer that sells 10,000,000 falsely marked packs of gum has committed 10,000,000 "offenses." *See Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009).[1]

*Forest Group* has created a massive litigation bubble. Hoping to collect 50% of the fines for tens of millions of falsely marked consumer goods, lawyers have been suing every company they could find. More than 130 new false marking cases have been filed since January. *See, e.g.*, http:// www.falsemarking.net; http:// www.grayonclaims.com/ false-marking-case-information/.

---

1 Section 292 sets the amount of the fine for each "offense" as "<u>not more than</u> $500 [emphasis added]," and the Federal Circuit pointed out in *Forest Group* that in some cases, the appropriate fine might be as little as "a fraction of a penny." 590 F.3d at 1304.

The 130 or more false marking cases filed since January are very different from the false marking cases that were filed in the previous 167 years. Until *Forest Group,* most false marking cases were brought by companies suing their competitors. These companies alleged that the competitors had deliberately marked their products with patents that did not truly cover them, thereby deceiving the public and causing harm to the plaintiff companies ("not covered" cases). By contrast, almost all the recent cases assert a new and different legal theory: that a product properly marked with a patent becomes "falsely" marked when that patent expires, and that knowledge of the patent's expiration constitutes an intent to deceive the public ("expired patent" cases).

Unlike the expert analysis generally required to bring a "not covered" case,[2] a person hoping to get rich quick with a *qui tam* "expired patent" case need only note the patent numbers on a few products on the Wal-Mart shelf and look up the patents on the Patent Office website to see if any have expired. *See* audio recording of oral argument in *Pequinot v. Solo Cup Co.*, Fed. Cir. *appeal docketed,* No. 09-1547 (April 6, 2010),

---

[2] To bring a "not covered" false marking case, a plaintiff has to (1) analyze and construe its competitor's patent as would a person having ordinary skill in the art of the patent at the time of the invention in light of the specification, the prosecution history in the Patent Office, and external references, (2) determine the technology, composition, or manufacture method of the marked product, and (3) compare each element of each claim in the patent to the product using the properly construed claim terms. *See, e.g.*, *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1350-1359 (Fed. Cir. 2005); *Pequignot v. Solo Cup Co.*, 540 F. Supp. 2d 649, 652-656 (E.D. Va. 2008); *DP Wagner v. Pro Patch Sys.*, 434 F. Supp. 2d 445, 451-56 (S.D. Tex. 2006).

available at http:// oralarguments.cafc.uscourts.gov/ mp3/ 2009-1547.mp3 (comment by Circuit Judge Rader at 03:00).[3]

There is an even more fundamental difference between the handful of "not covered" cases filed over the last 167 years and the horde of "expired patent" cases filed since January. The "not covered" cases have typically been filed by companies that can claim some injury-in-fact from their competitors' false marking. The "expired patent" cases, by contrast, are filed by *qui tam* relators who do not claim to have suffered any harm, nor indeed even to have purchased the product, but who merely went trolling in their local Rite-Aid or Acme looking for products that they could use as a basis for their claims. That is hardly the kind of service to the United States that Congress envisioned in creating this *qui tam* scheme.

C. <u>This Case Is a Typical "Expired Patent" Case</u>

Plaintiff Jane Hirschhorn is like the other plaintiffs who are rushing to cash in on *Forest Group*. As far as one can tell from her Complaint, Hirschhorn went trolling on store shelves, found some Arm & Hammer brand toothpastes marked with patents, and promptly sued Church & Dwight, the manufacturer. In her Complaint,

- Hirschhorn does **not** allege that she actually has ever purchased any Arm & Hammer toothpaste;

---

[3] With the patent in hand, the determination of whether it has expired is mechanical. The front page of the patent lists an issue date, an application date, and a priority date (which may be the application date), and based on those dates, the Patent Act sets the patent's expiration date. See 35 U.S.C. § 154(a), (c)(1).

- Hirschhorn does **not** allege that the patent markings induced her to buy Arm & Hammer toothpaste;
- Hirschhorn does **not** allege that the patent markings dissuaded her from buying another brand of toothpaste;
- Hirschhorn does **not** allege that she makes or sells toothpaste and so competes with Church & Dwight;
- Hirschhorn does **not** allege that she suffered any harm of any kind from the marking of allegedly expired patents on the toothpaste;
- Hirschhorn does **not** identify a toothpaste manufacturer that has actually suffered any harm because of the allegedly false markings;
- Hirschhorn does **not** allege that she herself was deceived by the marking on Arm & Hammer toothpaste;
- Hirschhorn does **not** allege that any toothpaste manufacturer or seller was deceived by the marking on Arm & Hammer toothpaste, and
- Hirschhorn does **not** allege that Church & Dwight intended to deceive anyone by marking its toothpastes with expired patents.

The closest Hirschhorn comes to actually claiming that someone, somewhere must somehow have been harmed is her allegation (undoubtedly without any investigation or other factual basis) that the markings "discouraged or deterred . . . competition and innovation in competing products." *See* Compl. ¶¶ 55-56a.

D. <u>The *Brooks Brothers* Decision and the Pending Federal Circuit Appeal</u>

Not surprisingly, the host of "expired patent" cases has already raised many significant issues of law. Two cases of importance are now before the Federal Circuit.

The first case is *Pequignot v. Solo Cup Co.*, Fed. Cir. no. 2009-1547. *Pequignot* presents the Federal Circuit with an opportunity to decide what level of intent is required by the false marking statute, and whether a plaintiff (like Hirschhorn) can sustain a cause of action without specific allegations of intent. The case was argued on April 6, 2010, and, based on the Federal Circuit's track record, a decision is likely this summer.

The second case, *Brooks Brothers,* Fed. Cir. 2009-1428, -1430, raises an even more fundamental question of first impression: do the federal courts have subject matter jurisdiction to hear "expired patent" cases like this one, brought by people like Jane Hirschhorn who have no actual interest in the case, and in which there is nothing but a conclusory and speculative claim of actual harm? In *Brooks Brothers*, the company was accused of selling bow ties marked with patents that expired in the 1950s. 615 F. Supp. 2d at 251. The plaintiff in *Brooks Brothers* claimed that he had purchased a Brooks Brothers bow tie (unlike plaintiff Hirschhorn, who has not alleged that she purchased any Arm & Hammer toothpaste), and he alleged that by marking its bow ties with an expired patent, Brooks Brothers had "wrongfully quelled competition" and "benefitted in at least maintaining their considerable market share . . . in the high-end haberdashery marketplace." *Id*. at 254. In a scholarly opinion, however, the district court held that the plaintiff's allegations were insufficient to give him Article III standing to bring the lawsuit. *Id.*

The briefing in the *Brooks Brothers* appeal is nearly complete. By this fall, the Federal Circuit will likely decide whether District Judge Stein was correct in holding that plaintiffs like Jane Hirschhorn lack standing to bring lawsuits of this nature, and that district courts lack Article III "case or controversy" subject matter jurisdiction to hear such cases.

## III. THIS CASE SHOULD BE STAYED PENDING THE *BROOKS BROTHERS* DECISION

This Court has the inherent power to stay any case to promote the economy of time and effort. *See Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d Cir. Pa. 1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)). The Court is to

consider three factors when determining whether to grant a stay: (1) whether the stay will promote judicial economy and simplify the issues; (2) whether the potential harm to the parties is outweighed by the need for the stay; and (3) whether the requested stay is of moderate length. *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 291 (E.D. Pa. 2009) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 U.S. Dist. LEXIS 13907, at *23-24 (E.D. Pa. Jul. 16, 2004)). All three factors favor a stay in this case.

A. A Stay Will Promote Judicial Economy and Simplify the Issues

If the Federal Circuit affirms the district court's decision in *Brooks Brothers*, this case (and the 130 like it) will come to an end for lack of subject matter jurisdiction. At the very least, the *Brooks Brothers* decision, in combination with the Federal Circuit's decision in *Pequignot,* will provide guidance in this uncharted area of law.

B. A Stay Will Not Harm Hirschhorn, bBut Lack of a Stay Will Harm Church & Dwight

Plaintiff Jane Hirschhorn could not possibly be prejudiced by a stay. First, Hirschhorn has no actual interest in how Arm & Hammer toothpastes are marked: she is not a manufacturer, seller, nor even a consumer as far we know. Second, there can be no concern that evidence is growing stale; the basic facts—what patents were marked on which toothpastes and when those patents expired—are not likely to be disputed. Third, no substantive activity has taken place in this case, and no discovery deadline or trial date has been set. In short, while some plaintiffs in some other kinds of cases can genuinely

be prejudiced by a stay, Jane Hirschhorn will suffer no prejudice at all.[4]

Church & Dwight, on the other hand, would be harmed if this case were to move forward before the Federal Circuit has decided whether the Court even has subject matter jurisdiction to hear it. First, plaintiff Hirschhorn will no doubt aim a barrage of discovery at Church & Dwight, particularly since Hirschhorn, having no real connection to the case, will not be concerned about any discovery directed at her. Second, if the case is not stayed, Church & Dwight will have to engage in extensive motion practice, asking this Court to decide the same issues of law that are now before the Federal Circuit as well as other issues of first impression, *e.g.*, whether Hirschhorn has standing, whether this court has subject matter jurisdiction, whether a proper patent marking becomes a false marking

---

4 The potential harm to the plaintiff must be more than just "the right to pursue his case and to vindicate his claim expeditiously." *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E. D. Pa. 1980). *See also Gonzalez v. City of Phila.*, 2009 U.S. Dist. LEXIS 47354, at *6-7 (E.D. Pa. June 4, 2009) (finding that the defendant's need for the stay outweighed the potential prejudice to the plaintiff from destruction or spoliation of evidence); *Soroush v. Ali*, 2009 U.S. Dist. LEXIS 100652, at *10-11 (E.D. Pa. Oct. 28, 2009) (finding that potential delay in judgment and delay in discovery was insufficient harm to plaintiff to deny the stay).

Examples of circumstances in which a stay would genuinely prejudice the plaintiff include *Ciolli v. Iravani*, 2008 U.S. Dist. LEXIS 74514, at *9-10 (E.D. Pa. Sep. 23, 2008) (denying stay because the delay in discovery would harm the plaintiff's ability to gather evidence); *State Farm Mut. Automobile Ins. Co. v. Beckham-Easley*, 2002 U.S. Dist. LEXIS 17896, at *6-11 (E.D. Pa. Sep. 18, 2002) (denying stay because plaintiff would be prejudiced by the potential dispersal of assets); *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 542 (D.N.J. 2008) (finding that the dispersal of assets during the stay would prejudice the plaintiff's ability to recover in the bankruptcy proceedings). Nothing of that sort is present in this case.

when the patent expires, whether mere knowledge of an expiration date constitutes an intent to deceive, whether a vague, speculative and conclusory allegation that patent markings "discouraged or deterred . . . competition and innovation in competing products" meets *Iqbal/Twombly* standards, and whether the false marking statute violates the "take care" clause in Article I of the Constitution.

Church & Dwight should not have to incur the considerable expense of responding to discovery and briefing legal issues of first impression when there is a good chance that the Federal Circuit will decide that this Court does not even have jurisdiction to hear the case. Nor should any Court be asked to waste its time adjudicating issues that will likely turn out to be moot.

C. The Requested Stay Is of Moderate Length

The stay requested is not one "of indefinite duration which require[s] a party to take affirmative steps for dissolution." *Cheyney State College*, 703 F.2d at 738 (citing *Landis*, 299 U.S. at 257). Church & Dwight only requests that the case be stayed until the Federal Circuit decides *Brooks Brothers*. The period of stay in this case would be shorter than the one anticipated in *SmithKline Beecham*, in which this Court granted a stay for an indefinite period with the condition that the parties provided a status update to the Court every six months until the Federal Circuit issued a decision on the plaintiff's motion for *en banc* review. *See* 2004 U.S. Dist. LEXIS 13907 at *33-34.

D. Other Courts Have Stayed "Expired Patent" Cases to Await the Federal Circuit's Rulings

Other courts have stayed cases like this. For example, in *Public Patent Found. v. GlaxoSmithKline Consumer Healthcare, L.P.*, no. 09-cv-5881, slip op. (S.D.N.Y. Feb. 17, 2010), the Court *sua sponte* ordered a stay pending the decision in *Brooks Brothers*.

The courts in both *San Francisco Tech., Inc. v. Adobe Sys., Inc.*, no. 09-cv-6083, slip op. (N.D. Cal. Apr. 13, 2010) and *Heathcote Holdings Corp. v. Crayola LLC*, no. 10-cv-342, slip op. (N.D. Ill. Apr. 8, 2010), granted a stay pending the *Brooks Brothers* appeal. In *Heathcote Holdings Corp. v. Church & Dwight Co.*, no. 08-cv-349, slip op. (E.D. Tex. Oct. 5, 2009), the court stayed the case pending the *Solo Cup* appeal (because *Brooks Brothers* had not yet been decided and appealed). In *Brule Research Assocs. Team, LLC v. A.O. Smith Corp.*, no. 08-cv-1116, slip op. (E.D. Wis. Aug. 11, 2009), the parties stipulated to a stay pending the *Solo Cup* appeal (also before *Brooks Brothers* was decided and appealed).

## IV. CONCLUSION

For all these reasons, the Court should stay all proceedings in this case pending the Federal Circuit's decision in *Brooks Brothers*.

Respectfully submitted,

Date: April 19, 2010

*s/ Fred T. Magaziner*

Fred T. Magaziner.
Attorney I.D. 23332
Kevin Flannery
Robert W. Ashbrook, Jr.
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
*Counsel for Defendant Church & Dwight Co., Inc.*

# CERTIFICATE OF SERVICE

I certify that today in

*Hirschhorn v. Church & Dwight, Inc.*, E.D. Pa. no. 2:10-cv-1156-JF

I served the following documents via the Court's ECF system:

Defendant's Motion for a Stay Pending the Federal Circuit's Decision on the Issue of Subject Matter Jurisdiction

Memorandum in Support of Defendant's Motion for a Stay Pending the Federal Circuit's Decision on the Issue of Subject Matter Jurisdiction

Certificate of Service

Proposed Order

upon the following persons:

Jane Hirschhorn
c/o Aaron J. Freiwald, Esq.
Layser & Freiwald, P.C.
500 Walnut Street, 18th Floor
Philadelphia, PA 19102
ajf@layserfreiwald.com

Dated: *April 19, 2010*

s/ *Robert W. Ashbrook, Jr.*.
Robert W. Ashbrook, Jr.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANE HIRSCHHORN**, Plaintiff | ) | |
| v. | ) | No. 2:10-cv-1156-JF |
| **CHURCH & DWIGHT CO., INC.**, Defendant | ) | |

**[PROPOSED] ORDER**

Upon consideration of Defendant Church & Dwight Co. Inc.'s Motion for a Stay Pending the Federal Circuit's Decision on the Issue of Subject Matter Jurisdiction and any response thereto, it is hereby ORDERED that Defendant Church & Dwight Co., Inc.'s Motion is GRANTED. All pretrial proceedings are hereby STAYED pending the Federal Circuit's decision on the issue of subject matter jurisdiction in *Stauffer v. Brooks Brothers*, Fed. Cir. nos. 2009-1428, -1430.

_______________________________
FULLAM, J.